```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

Ethan Book Jr.                  :
                                :
v.                              :    No. 3:04cv442 (JBA)
                                :
Richard Tobin and               :
Martin L. Nigro                 :
```

**Ruling on Defendants' Motion to Dismiss [Doc. # 43]**

Pro-se plaintiff Ethan Book Jr. ("Book") seeks redress under 42 U.S.C. § 1981, 1983, 1985, 1986, and 1988, for claimed violations of the First, Sixth, Eighth, and Fourteenth Amendments of the Constitution, arising from his arrest and conviction for 24 counts of criminal harassment.  Defendants Richard Tobin and Martin L. Nigro are Connecticut Superior Court Judges who presided over the state criminal proceedings.  Because defendants are entitled to absolute judicial immunity for their judicial acts, and because the Rooker-Feldman doctrine bars this court from exercising jurisdiction over claims that have already been decided by the state court, defendants' motion to dismiss [Doc. # 43] is GRANTED.[1]

---

[1] It is not clear from plaintiffs' complaint whether he intended to sue defendants in their official capacity as well as their individual capacity.  Official capacity suits for monetary damages are barred by the Eleventh Amendment, however, and also are not cognizable under Section 1983.  "States-- and state officers, if sued in their official capacities for retrospective relief--are immunized by the Eleventh Amendment from suits brought by private citizens in federal court and, in any event, are not "persons" subject to suit under § 1983." K & A Radiologic Technology Services, Inc. v. Comm. of Dept. of Health on New York, 189 F.3d 273, 278 (2d Cir. 1999) (citing Will v. Michigan

1

After an arrest on January 19, 2001 and jury trial, on October 2, 2001 Book was convicted of 24 counts of criminal harassment in the second degree and acquitted of 10 counts of this offense.  Amended Complaint [Doc. # 40] at 9; Criminal/Motor Vehicle Judgment File, State of CT v. Ethan Book, Jr., No. 01a-CR010135646-S [Doc. # 40, Ex. A].  Book was sentenced to five years imprisonment, with execution suspended after one year, and one year probation.  See Amended Transcript of Proceedings, Oct. 31, 2001 [Doc. # 44, Ex. C] at 27.  According to plaintiff, he was discharged by the Connecticut Department of Correction on January 8, 2004.  Am. Compl. at 11.   Plaintiff's complaint challenges defendants' actions in the course of his arrest,

---

Dep't of State Police, 491 U.S. 58, 70-71 & n. 10 (1989); Edelman v. Jordan, 415 U.S. 651, 664-68 (1974)).
    The Eleventh Amendment immunizes states, and state officials sued in their official capacity, from federal court retrospective monetary relief.  As the Supreme Court explained in Ford Motor Co. v. Department of Treasury, 323 U.S. 459 (1945), "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." Id. at 464; see also Edelman, 651 U.S. at 663 ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.").
    Further, as the Supreme Court reasoned in Will, Section 1983's application to "[e]very person" excludes the States, and although "state officials literally are persons," an official-capacity suit against a state officer "is not a suit against the official but rather is a suit against the official's office.  As such it is no different from a suit against the State itself." Will, 491 U.S. at 71 (citation omitted).

trial, and conviction, and seeks $50 million in damages and various orders of mandamus.

Count One of plaintiff's amended complaint alleges that Judge Tobin approved the warrant for plaintiff's arrest without probable cause and with malicious intent.  Count Two alleges that Judge Tobin issued orders on various pre-trial motions, including denying Book's motion to vacate the arrest warrant, in violation of Connecticut Practice Book § 1-22, which prohibits a judge who approved an arrest warrant from subsequently reviewing the validity of the warrant.  Count Three alleges that Judge Tobin demonstrated bias and committed errors in the course of administering the criminal jury trial.  Count Four alleges that Judge Tobin improperly denied Book's motions for arrest of judgment/acquittal/rehearing and for a pre-sentence investigation, imposed an unusually harsh sentence given the nature of the offense, and caused the Court Reporter to delay in providing him with transcripts of the proceedings.  Count Five alleges improper conditions on the appeal bond set by Judge Tobin, Counts Six and Seven allege that Judge Tobin did not timely address Book's motions for reconsideration and disqualification, Counts Eight and Nine allege that Judge Tobin failed to ensure that Book was aware that the purpose of a January 17, 2003 hearing was to revoke his appeal bond, improperly revoked the appeal bond and improperly imposed a

sentence.  Count Ten alleges errors in Judge Tobin's handling of post-sentencing motions, and Count Eleven alleges that Judge Tobin failed to ensure that an endorsed notice of appeal and transcripts of proceedings were made available to Book.  Count Twelve alleges that Judge Tobin unconstitutionally ordered him not to contact the Court Clerk by telephone.  In Count Thirteen, Book seeks a mandamus ordering Judge Nigro to reverse his decisions denying Book's motions for reconsideration, waiver of fees, and appointment of counsel, and in the alternative seeks a mandamus ordering Judge Tobin or Judge Nigro to endorse Book's Notice of Appeal.  In Count Fourteen, Book seeks a mandamus that Judge Tobin or Judge Nigro reverse and terminate his probation, on grounds that the condition of his probation that he not contact M. Villamil violates his rights under the First, Eighth, Ninth, and Fourteenth Amendments of the Constitution.  Plaintiff seeks damages for the violations alleged in Counts One through Twelve of his Amended Complaint.

    **A.  Judicial Immunity**

As Superior Court judges, defendants are entitled to absolute immunity from individual liability for monetary relief for their "judicial acts."[2]  "Although unfairness and injustice

---

[2] The mandamus orders plaintiff seeks must be viewed as a form of injunctive relief, and are similarly entitled to immunity.  In <u>Pulliam v. Allen</u>, 466 U.S. 522, 536-543 (1984), the Supreme Court held that judicial immunity does not extend to suits for prospective injunctive relief.  In 1996, however,

to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" Mireles v. Waco, 502 U.S. 9, 10 (1991) (quoting Bradley v. Fisher, 13 Wall. 335, 347 (1872)).  Judicial immunity is not overcome by allegations of bad faith or malice, Mireles, 502 U.S. at 11, and a judge remains absolutely immune for his judicial acts "even if his exercise of authority is flawed by the commission of grave procedural errors." Stump v. Sparkman, 435 U.S. 349, 359 (1978). "It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants.  His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption." Pierson v. Ray, 386 U.S. 547, 554 (1967).

Judicial immunity may be overcome only if (1) the actions alleged were "not taken in the judge's judicial capacity," or (2) if the "actions, though judicial in nature, [were] taken in the complete absence of all jurisdiction."  Mireles, 502 U.S. at 11-

---

Congress amended 42 U.S.C. § 1983 to state:  ". . . in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

12 (citations omitted). As all of plaintiff's claims against Judge Tobin and Judge Nigro arise out of alleged actions that clearly fall within the scope of their authority as Superior Court Judges, over which they had jurisdiction, plaintiff cannot overcome judicial immunity. Quintessential judicial acts include presiding over trial proceedings, making evidentiary rulings, issuing jury instructions, and deciding motions, and remain protected by judicial immunity even if the decisions are erroneous, untimely, and in excess of the judge's authority. See Bradley, 80 U.S. at 351-2; Forrester v. White, 484 U.S. 219, 227 (1988); Stump, 435 U.S. at 356. Book's allegations that Judge Tobin "failed to ensure" that an endorsed notice of appeal and complete transcripts were provided to Book are likewise judicial acts entitled to immunity, because such alleged defects in supervision were adjudicative, discretionary decisions which, like a court's management of its docket, are "part of its function of resolving disputes between parties." Rodriguez v. Weprin, 116 F.3d 62, 66-67 (2d Cir. 1997) (holding that "court clerks are entitled to immunity for harms allegedly related to the delay in scheduling appellant's appeal," and for "their alleged refusal of appellant's document request to obtain additional transcripts and expand the appellate record."). Superior Court Judges are charged with appointing and directing the actions of the Court clerks, see Conn. Gen. Stat. § 51-51v,

51-52a, and it is clear that "[e]very court has supervisory power over its own records and files," Nixon v. Warner Communications, Inc., 435 U.S. 589, 598 (1978).[3] Relatedly, because a court has "the inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for bad-faith conduct or for disobeying the court's orders," Mickle v. Morin, 297 F.3d 114, 125 (2d Cir. 2002), Judge Tobin's alleged order that Book not to contact the Court Clerk by telephone is protected as a judicial act.[4]

---

[3] Antoine v. Byers & Anderson, Inc., 508 U.S. 429 (1993), and Forrester v. White, 484 U.S. 219 (1988), are not to the contrary. In Antoine, the Supreme Court held that court reporters are not entitled to absolute immunity for failing to produce a transcript of a criminal trial, because "they are afforded no discretion in the carrying out of this duty." Id. at 436. The kind of supervisory powers plaintiff challenges here, however, involve decisions about when and how to direct others, and therefore must be viewed as discretionary, not merely ministerial.
   In Forrester, the Supreme Court held that the judge was not entitled to absolute immunity for demoting and discharging a probation officer because the judge was acting in an "administrative," not adjudicative capacity. Id. at 229. In contrast to the supervisory actions implicated in the discharge of a court employee, here the alleged supervisory defects directly implicated the adjudication of issues in Book's criminal case. Cf. Wilson v. Kelkhoff, 86 F.3d 1438, 1444-45 (7th Cir. 1996) ("Antoine and Forrester do not support the proposition that judicial acts that are part of the judicial function are excluded from absolute immunity because they could be characterized as nondiscretionary or even ministerial. . . . [C]onduct deserving of protection includes not only actual decisions, but also those mundane, even mechanical, tasks undertaken by judges that are related to the judicial process[.]") (citation, internal quotation marks, and alterations omitted).

[4] While orders sanctioning parties may require notice and hearing to comply with due process, Book's claimed procedural errors do not deprive Judge Tobin of judicial immunity. Such

These acts, moreover, were well within the jurisdiction of the state Superior Court.  The Connecticut Superior Court is a "constitutional court of unlimited jurisdiction," State v. Carey, 222 Conn. 299, 305 (1992) (quoting State v. Stallings, 154 Conn. 272, 278 (1966)); see also Conn. Const., art. 5, § 1, with authority to adjudicate a criminal causes of action and "inherent authority to convict and sentence a defendant." Carey, 222 Conn. at 305.  Consistent with this authority, Superior Court judges in Connecticut have the authority to issue arrest warrants, see Conn. Gen. Stat. § 54-2a; Rules of the Superior Court, §§ 36-1, 36-3; to set bond and "modify or revoke at any time the terms and conditions of release," Rules of the Superior Court § 43-2(b); Conn. Gen. Stat. § 54-63(f); to issue protective orders, Conn. Gen. Stat. §§ 46b-38c(d)(1), 46b-38(e); and to "order probation and take it away." Carey, 222 Conn. at 305; see also Conn. Gen. Stat. §§ 53a-29 through 53a-34; Liistro v. Robinson, 170 Conn. 116, 128, 365 A.2d 109 (1976) ("A probationer is subject to judicial control and 'the court may modify or enlarge' the conditions of probation.").

One allegation requires further consideration.  Count Two of plaintiff's amended complaint alleges that Judge Tobin violated Section 1-22 of the Connecticut Superior Court Rules in ruling on

---

orders, however erroneous, are well within the jurisdiction of the court.

a motion regarding vacating the arrest warrant, because Judge Tobin had initially approved the arrest warrant.  Section 1-22 provides: "A judicial authority may not preside at the hearing of any motion attacking the validity or sufficiency of any warrant the judicial authority issued . . . ."  While this provision demands disqualification, nothing in the text of Section 1-22 suggests that it was intended as a jurisdiction-stripping provision amending the unlimited subject matter jurisdiction of the superior courts.  Cf. United States v. Will, 449 U.S. 200, 211 (1980) (concluding that federal district courts and Supreme Court had jurisdiction despite need for disqualification under 28 U.S.C. § 455, reasoning: "Section 455 of Title 28 neither expressly nor by implication purports to deal with jurisdiction. On its face § 455 provides for disqualification of individual judges under specified circumstances; it does not affect the jurisdiction of a court. Nothing in the text or the history of § 455 suggests that Congress intended, by that section, to amend the vast array of statutes conferring jurisdiction over certain matters on various federal courts.").  While ruling on Book's motion to vacate his arrest warrant thus may have exceeded Judge Tobin's authority under the Connecticut Rules of Court, such a ruling was not undertaken in the "clear absence of all jurisdiction." Bradley, 80 U.S. at 351-52.

    **B.  Rooker-Feldman Doctrine**

This Court is also precluded by the Rooker-Feldman doctrine from proceeding on plaintiffs' claims. "The Rooker-Feldman doctrine provides that, because only the United States Supreme Court may review a final decision of a state court, federal district courts do not have jurisdiction over claims that have already been decided, or that are "inextricably intertwined" with issues that have already been decided, by a state court." Bridgewater Operating Corp. v. Feldstein, 346 F.3d 27 (2d Cir. 2003) (citations omitted). Plaintiffs' claims are paradigmatic of those barred by this doctrine, i.e., "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 125 S.Ct. 1517, 1521-22 (2005). What plaintiff seeks is collateral review of his criminal conviction. While his claims could have been raised on direct appeal, or, during the period when he remained in custody, in a state or federal habeas petition, this § 1983 suit is an improper procedural vehicle.

Accordingly, defendants' motion to dismiss [Doc. # 43] is GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 16th day of August, 2005.**